IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| OSCAR L.,<br><br>        Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>        Defendant. | 8:21CV444<br><br>MEMORANDUM<br>AND ORDER |

Plaintiff Oscar L. ("Oscar") seeks judicial review of the final decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"), denying Oscar's claims for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Now pending before the Court are Oscar's Motion for an Order Reversing the Commissioner's Decision (Filing No. 14) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 18). For the reasons below, the Court affirms the Commissioner's denial of benefits.

I.    **BACKGROUND**

Oscar was born in 1975.[1] He worked as a painter until his alleged disability onset date of October 1, 2014. He applied for disability benefits and supplemental security income in March 2015, alleging disability due to back pain and depression. The Social Security Administration ("SSA") denied both claims initially on July 29, 2015, and on reconsideration on November 23, 2015. Oscar appeared and testified at a hearing held in front of administrative law judge ("ALJ") Marc Mates ("ALJ Mates") on September 7,

---

[1] For a more detailed discussion of the background facts and evidence in this case, see the Court's Memorandum and Order in *Leiva v. Berryhill*, No. 8:18CV461, 2019 WL 3325340 (D. Neb. July 24, 2019).

2017. ALJ Mates denied Oscar's claim on January 18, 2018, and the Appeals Council denied review.

Oscar then pursued a civil action before this Court. *See Leiva*, 2019 WL 3325340. At that time, Oscar presented three issues for review: (1) whether ALJ Mates developed a full and fair record with respect to Oscar's work limitations, (2) whether ALJ Mates adequately resolved an apparent conflict between Oscar's illiteracy and the language-development requirements in the job listings relied on to deny benefits, and (3) whether ALJ Mates was improperly appointed in violation of the Appointments Clause of the United States Constitution.

On July 24, 2019, the Court remanded Oscar's claim for further proceedings on the unresolved-conflict issue. The Court rejected Oscar's remaining arguments, including his Appointments Clause challenge.[2] On remand, the Appeals Council directed the ALJ to conduct further proceedings consistent with the Court's order and also directed consolidation of a subsequent claim.

On March 13, 2020, the same ALJ—ALJ Mates—held Oscar's remand hearing. At the hearing, Oscar and an impartial vocational expert, Jeffrey Magrowski, testified. Oscar was represented by counsel used an interpreter during his testimony.

Oscar's testimony was generally consistent with statements previously submitted to the SSA. Oscar testified that he injured his back in a car accident in 2010. Two years later, he stopped working as a painter because of the injury and because his employer considered

---

[2]The Court determined Oscar forfeited the Appointments Clause argument by failing to raise it before the ALJ or Appeals Council. *Leiva*, 2019 WL 3325340, at *8. The United States Supreme Court later ruled in *Carr v. Saul*, 593 U.S. ___, 141 S. Ct. 1352 (2021), that a Social Security claimant does not forfeit his or her Appointments Clause challenge by failing to raise the issue in the administrative proceedings.

him a liability based on Oscar's use of pain medication. Oscar testified he attempted suicide in 2015 by driving into a tree.

Because of his back pain, Oscar testified he has difficulty sleeping, must change positions frequently throughout the day, is unable to do daily tasks like cook or grocery shop, and recently began using a cane. Oscar reported that he had been experiencing memory problems for the past six months and had seen a psychologist regularly for five years. He also testified he saw Dr. Margarita Rodriguez-Escobar ("Dr. Rodriguez-Escobar") regularly for primary care. Additional records as to Oscar's physical and mental conditions were received and considered by the ALJ.

After Oscar finished testifying, ALJ Mates presented various hypothetical situations to vocational expert Magrowski. In his hypotheticals, ALJ Mates asked Magrowski to assume someone of Oscar's age, education, and work experience. He also had Magrowski assume a person with a light-work limitation, "which generally involve[s] lifting and carrying no more than 10 pounds frequently, 20 pounds occasionally," where "standing, walking and sitting is usually about six hours each," and where "other postural maneuvers like bouncing and stooping can be done on an occasional basis."

Given those limitations, Magrowski testified the hypothetical person would not be able to perform the past work Oscar identified. Magrowski testified, however, that there are other jobs that fall within those limitations, including laundry bagger and baked-goods racker. Magrowski also identified jobs based on a sedentary-work limitation, including assembler and toy stuffer. Moreover, Magrowski testified that these jobs could be performed by individuals who speak Spanish and require no reading nor writing.

On April 23, 2020, ALJ Mates once again determined Oscar is not disabled under the Act because Oscar is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Oscar appealed, and on September 24, 2021, the Appeals Council denied review, making the ALJ's decision the final decision

of the Commissioner. *See Kraus v. Saul*, 988 F.3d 1019, 1023 (8th Cir. 2021). Oscar seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g).

## II. DISCUSSION

### A. Standard of Review

Section 405(g) entitles a claimant who has unsuccessfully completed the administrative-review process to judicial review of the Commissioner's final decision in federal court. *See Smith v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1765, 1772-73 (2019). In conducting that review, the Court does "not reweigh the evidence," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003), nor retry the issues de novo, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). The Court must affirm the Commissioner's decision if the "denial of benefits complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

The threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019). It is "more than a mere scintilla," *id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), "less than a preponderance, but enough that a reasonable mind would find it adequate to support" the decision, *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Gonzales v. Barnhart,* 465 F.3d 890, 894 (8th Cir. 2006)).

The Court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it" to decide whether substantial evidence supports the denial of benefits. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The Court does "not reweigh the evidence," *Gonzales*, 465 F.3d at 894 (quoting *Baldwin,* 349 F.3d at 555, and defers to the Commissioner's evaluation of credibility "as long as 'good reasons and substantial evidence'" support it. *Julin*, 826 F.3d at 1086 (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

"If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the [C]ommissioner's decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In other words, the Court should "disturb the [Commissioner's] decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

B. **Eligibility for Disability Benefits and Supplemental Security Income**

Under the Act, Oscar must be disabled to qualify for disability benefits and supplemental security income. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). To prove he is disabled, Oscar must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. §§ 423(d)(1)(A), 1382c(a)(3)(A). Oscar is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

C. **The Five-Step Process**

An ALJ determines disability using a five-step "sequential evaluation process." *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting 20 C.F.R. § 404.1520(a)(4)). The ALJ considers

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). The claimant has the burden to show he is disabled through the

first four steps. *See Moore v. Astrue*, 572 F.3d 520, 523. The steps are followed in sequential order, such that "[i]f it can be determined that a claimant is not disabled at a step, the ALJ does not need to continue to the next step." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)).

Here, ALJ Mates applied the five-step process in reaching is April 2020 decision. He first found at Step One that Oscar had not engaged in substantial gainful activity since October 1, 2014, the alleged disability-onset date.

At Step Two, ALJ Mates determined Oscar has degenerative disc disease of the cervical and lumbar spine, a severe impairment that "significantly limit[s] [his] ability to perform basic work activities." He also determined Oscar has multiple non-severe impairments—which have no more than a minimal limitation on his ability to perform basic work activities—including hypertension, lower gastrointestinal bleed, insomnia, tendinitis of the left knee, and abdominal pain.

ALJ Mates also found "[Oscar's] medically determinable mental impairment of mood disorder does not cause more than minimal limitation in his ability to perform basic mental work activities and is therefore nonsevere." ALJ Mates considered the four broad functional areas of mental functioning set out for evaluating mental disorders, including: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c); 416.920a(c). In concluding Oscar's impairments are non-severe, ALJ Mates gave great weight to the opinions of the agency psychological consultants who reviewed Oscar's claim. He opined, "[T]hese opinions are consistent not only with the evidence as it stood at the lower levels of adjudication, but also with the evidence received at the hearing level."

At Step Three, ALJ Mates concluded that Oscar's impairments and combination of impairments do not "equal[] the severity of one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."

ALJ Mates then moved to Steps Four and Five to determine whether Oscar can "perform 'past relevant work,' and if not, whether [he] can perform 'any other work.'" *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017). Making these determinations required the ALJ to assess Oscar's residual functioning capacity, which is the most a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Residual functioning capacity is determined "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his] limitations." *Kraus*, 988 F.3d at 1024 (quoting *Baldwin*, 349 F.3d at 556 (8th Cir. 2003)).

According to ALJ Mates, "after careful examination of the entire record," Oscar's residual functioning capacity is as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which generally involves lifting and carrying no more than 10 pounds frequently and 20 pounds occasionally, and standing, walking, and sitting about 6 hours each in an 8-hour day. He cannot climb ladders, ropes, or scaffolds (but can perform all other postural maneuvers on an occasional basis), and he must avoid concentrated exposure to temperature extremes, and exposure to vibration and hazards, like unprotected heights and dangerous, moving machinery.

In reaching this conclusion, ALJ Mates explained Oscar's "medically determinable impairments could reasonably be expected to cause [Oscar's] alleged symptoms" but found Oscar's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Based on his residual functioning capacity, ALJ Mates determined at Step Four that Oscar is unable to perform his past relevant work.

At Step Five, the burden shifted to the Commissioner "to show there are other available jobs in the economy." *Moore*, 572 F.3d at 523. ALJ Mates found—relying, in part, on vocational expert testimony—that there are jobs in significant numbers in the national economy that Oscar could perform with his particular residual functioning capacity. He thus concluded Oscar "has not been under a disability, as defined in the [Act], from October 1, 2014 through the date of" the ALJ's decision.

### C.   Issues on Review

Oscar seeks judicial review of whether (1) he should have been afforded a new ALJ on remand, (2) ALJ Mates adequately developed the record, (3) ALJ Mates afforded proper weight to the primary-care physician opinions, (4) ALJ Mates erred by finding his mental impairments were non-severe, and (5) ALJ Mates was properly appointed.

#### 1.   ALJ on Remand

Oscar first argues that remand is warranted because of an alleged violation of the Appointments Clause of the United States Constitution. Oscar contends because ALJ Mates was not properly appointed when he presided over Oscar's September 2017 hearing, Oscar is entitled to a new hearing with a different ALJ. Oscar invokes *Lucia v. Securities and Exchange Commission*, 585 U.S. ___, 138 S. Ct. 2044, 2055 (2018), arguing the remedy for an adjudication tainted with an Appointments Clause violation is a new hearing with a different ALJ.

In *Lucia*, the Supreme Court held that the appointment of Securities and Exchange Commission ("SEC") ALJs by a lower-level staff member and not the President, a Court of Law, or a Head of the Department violated the Appointments Clause because those ALJs exercised "significant discretion" in carrying out their "important functions." *Lucia,* 138 S. Ct. at 2053. Because the SEC ALJs had not been properly appointed, and because the plaintiff in *Lucia* had made a "timely challenge" by "contest[ing] the validity of [the ALJs'] appointment before the [SEC], and continued pressing that claim in the Court of Appeals and th[e] [Supreme] Court," the *Lucia* Court "held that the appropriate remedy . . . [was] a

8

new hearing before a properly appointed official." *Id*. at 2055 (internal quotations and citations omitted). The Court went on to say, "To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing." *Id*.

Like SEC ALJs, SSA ALJs—including ALJ Mates—were previously appointed by lower-level staff rather than the head of the agency. Attempting to cure any constitutional deficiencies, SSA's then-Acting Commissioner, Nancy A. Berryhill ("Berryhill"), issued an order on July 26, 2018, ratifying the appointments of all SSA ALJs and approving them as her own. *See* SSR 19-1p, 84 Fed. Reg. 9582-02, 2019 WL 1202036 (Mar. 15, 2019) ("To address any Appointments Clause questions involving Social Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of our ALJs and approved those appointments as her own.")

ALJ Mates rendered his first decision denying Oscar's claims in January 2018, prior to this ratification. After the Appeals Council denied review Oscar pursued an action before this Court. *See Leiva*, 2019 WL 3325340. At that time, the Court determined Oscar forfeited his Appointments Clause argument but remanded the case on another ground. Oscar did not appeal that Order.

On remand, on March 13, 2020, ALJ Mates again held a hearing for Oscar, and then issued another unfavorable decision in April 2020. The Appeals Council rejected Oscar's exceptions to that decision, including Oscar's argument that he was entitled to a new ALJ post-*Lucia*. Oscar filed the present case in November 2021—as a new, separate action.

Oscar now argues as follows: (1) under *Lucia*, ALJ Mates was improperly appointed for Oscar's September 2017 hearing; (2) on remand, Oscar's March 2020 hearing should have been in front of a new ALJ and not ALJ Mates; and (3) the Court can cure that error in the present case by ordering a new hearing in front of a different ALJ. In other words,

9

Oscar argues that the ratification of ALJ Mates between his two hearings did not cure the constitutional defect from the first hearing.

The Commissioner, in turn, argues the only decision currently before the Court is ALJ Mates's April 2020 decision, which was issued while he was a properly-appointed ALJ. The Commissioner also avers Oscar is precluded from the requested relief because he did not appeal the Court's July 2019 Order.

The Court notes this case is procedurally peculiar. Neither party, nor the Court, has identified a factually-similar case within the Eighth Circuit. That said, the Court agrees that Oscar is precluded from the requested relief.

In support of his position, Oscar relies on a series of cases which take what Oscar refers to as the "*Welch* approach." In *Welch v. Comm'r of Soc. Sec.,* the plaintiff appealed an improperly-appointed[3] ALJ's decision that he was not disabled. 2021 WL 1884062 (S.D. Ohio May 11, 2021), *report and recommendation adopted by Welch v. Comm'r of Soc. Sec*., 2021 WL 2142805 (S.D. Ohio May 26, 2021). Upon a joint motion of the parties, the court remanded the matter to the Commissioner for further administrative proceedings. *Id*. Thereafter, the same ALJ again found that the plaintiff was not disabled. *Id*. The second hearing and decision occurred after the ALJ's appointment had been ratified by Commissioner Berryhill. *Id*. at *3. The plaintiff subsequently appealed and raised the Appointments Clause challenge for what appears to be the first time. *Id*.

The *Welch* court determined that the plaintiff was entitled to a new hearing by a different, constitutionally-appointed ALJ. *Id*. at * 5. In doing so, the court reasoned that the plaintiff timely asserted his Appointments Clause challenge and that *Lucia's* remedy was required "[b]ecause [the ALJ] initially heard and ruled upon [p]laintiff's claim, he

---

[3]The District Court in *Welch* found that the Commissioner conceded this issue in their briefing. This Court similarly finds that the Commissioner has not presented any argument or evidence opposing Oscar's position that the ALJ was improperly appointed at the 2017 hearing.

10

could not un-ring that bell and 'be expected to consider the matter as though he had not adjudicated before.'" *Id.* at \*5 (quoting *Lucia*, 138 S. Ct. at 2055). All of the other cases cited by Oscar follow similar reasoning. *See Bobbie J. v. Comm'r of SSA*, 2022 WL 952957, at \*2-4 (S.D. Ohio March 30, 2022); *Mary D. v. Kijakazi*, 2021 WL 3910003, at \*10 (D. Conn. Sept. 1, 2021); *Elissa K. v. Comm'r of Soc. Sec.*, 2021 WL 4452849, at \*6-7 (W.D. Wash. Sept. 29, 2021); *James R. v. Comm'r of Soc. Sec.*, 2021 WL 4520560, at \*6-7 (W.D. Wash. Oct. 4, 2021).

However, each case cited by Oscar contains an important factual distinction from the present case: in those cases, the district court never decided the Appointments Clause issue prior to remand for the subsequent hearing. Thus, in all of the cases relied upon by Oscar, there was never a final, appealable order from the district court on the plaintiff's Appointments Clause challenge. That is not the case here.

This Court considered, and rejected, Oscar's challenge to the constitutionality of the ALJ's appointment in its July 2019 Order. Oscar was denied some of his requested relief, but he declined to appeal. *See Forney v. Apfel*, 524 U.S. 266, 271 (1998) ("[T]he District Court's order gives petitioner some, but not all, of the relief she requested; and she consequently can appeal the District Court's order insofar as it denies her the relief she has sought"). Oscar's current challenge is, in effect, an improper collateral attack on a separate decision that had become final, rather than a proper challenge under *Lucia*. Oscar cannot avoid his own procedural default which now precludes him from obtaining judicial review. *See Obenchain v. Comm'r of Soc. Sec. Admin.,* No. 1:20-CV-168-JVB-JPK, 2022 WL 10311981, at \*5 (N.D. Ind. June 24, 2022*), report and recommendation adopted sub nom. Obenchain v. Kijakazi*, No. 1:20-CV-168-JVB-JPK, 2022 WL 4545937 (N.D. Ind. Sept. 28, 2022) (holding Plaintiff's failure to file a timely action for judicial review of his Appointments Clause challenge did not entitle him to a writ of mandamus).

Moreover, the Court is not convinced Oscar would be entitled to a new hearing before a different ALJ irrespective of his prior challenge. In *Lucia* and *Carr*, the ALJs

11

were improperly appointed when they rendered the decision being reviewed in federal court. Here, the only decision currently under review is the ALJ's April 2020 decision, which was issued after the ALJ's appointment was ratified by the Acting Commissioner. Thus, the ALJ was properly appointed during the entire adjudication currently before the Court, and no Appointments Clause violation exists.

Other courts have reached similar conclusions. *See Govachini v. Comm'r of Soc. Sec.*, No. 19-1433, 2020 WL 5653339, at *1 n.1 (W.D. Pa. Sept. 23, 2020) (rejecting an Appointments Clause challenge because the ALJ "was properly appointed during the entirety of the administrative adjudication" that occurred after the original decision was overturned); *Camille B. v. Kijakazi*, No. 20-262, 2021 WL 4205341, at * 3 (E.D. Va. Sept. 15, 2021) (same); *Figueroa v. Comm'r of Soc. Sec.*, No. CV 20-346-E, 2022 WL 721283, at *1 (W.D. Pa. Mar. 10, 2022) (rejecting a similar Appointments Clause challenge where the plaintiff said he was entitled to have his case assigned to a different ALJ on remand based on *Lucia*); *Raper v. Comm'r of Soc. Sec.*, No. 5:20-CV-597-PRL, 2022 WL 1078128, (M.D. Fla. Mar. 25, 2022) (finding remand was not warranted where there was no Appointments Clause deficiency in the decision under review). Given these considerations, Oscar is not entitled to a new hearing before a different ALJ.

### 2. Development of the Record

Next, Oscar argues the ALJ failed to "fully and fairly" develop the record as to the opinions relied on for both his mental impairments and physical limitations. Regarding his mental impairments, Oscar contends "the ALJ provided no good reason for why the [2015] agency psychological consultant opinions remained valid," and that the ALJ should have "further developed the record as far as how [Oscar's] mental impairments impacted his ability to work."

Oscar also argues the ALJ should have ordered a consultative examination or called a medical expert to opine as to Oscar's physical limitations. This was necessary, Oscar argues, because the ALJ determined at the initial-review stage that the evidence indicates

12

Oscar is capable of a reduced range of light work, which is less restrictive than the sedentary-exertional work determination made at the reconsideration stage.

An ALJ has a duty to "develop the record fairly and fully, independent of the claimant's burden to press his case." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)). Courts remand "for further development not only where evidence of functional limitations is lacking, but also where the record presents conflicting medical opinions as to which the Commissioner fails to explain a choice." *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020) (citing *Combs*, 878 F.3d at 646). Reversal for failure to develop the record is only appropriate "where such failure is unfair or prejudicial." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (quoting *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir.1995)).

Although an ALJ is authorized to order a consultative evaluation "if the existing medical sources do not contain sufficient evidence to make a determination," an ALJ is not required to order such an "evaluation of every alleged impairment." *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989); *see also* 20 C.F.R. §§ 404.1517, 404.1520b, 416.917, 416.920b. An ALJ need not order a consultative evaluation if the record is sufficient to allow the ALJ "to make an informed decision." *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (quoting *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985)); *see also Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."). Such is the case here.

To the extent Oscar suggests the prior administrative medical findings are stale, that argument fails. The reports are within the relevant time frame based on Oscar's alleged disability onset date of October 2014, and the ALJ did not err in relying on them. When reaching his determination as to Oscar's residual functioning capacity, the ALJ did not exclusively rely on the administrative medical findings, but also fully analyzed the more recent evidence and determined it did not establish greater functional limitations.

Oscar also disagrees with the weight afforded to various opinions by the ALJ. The ALJ's decision to give more weight to one medical consultant's prior administrative medical findings over another's did not require him to undertake additional record development. Rather, "it is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). The ALJ considered the evidence as a whole, including evidence received at the hearing level, and determined the opinion at the initial level was "more consistent with the evidence as a whole." The ALJ did not reversibly err in developing the record on Oscar's work limitations and analyzing the conflicting medical evidence.

Along these lines, Oscar argues the ALJ's decision created a *Combs v. Berryhill* issue "given the ALJ did not provide any good reason for favoring the initial application opinion over the reconsideration opinion as far as [Oscar] being able to perform light exertional level work." Oscar's reliance on *Combs* is misguided. In *Combs*, the ALJ improperly relied on his own inferences about the meaning of various terms in the claimant's medical records when determining the relative weight to assign the opinions. *Combs*, 878 F.3d at 647. The Eighth Circuit determined the ALJ failed to "fully and fairly develop the record" and remanded for further inquiry. *Id*. As the Commissioner points out, Oscar has failed to identify any unclear terms or inferences he contends the ALJ unduly considered or improperly relied on in his analysis. The Court agrees.

The Court finds that the administrative record in this case contains ample evidence "to allow the ALJ to make an informed decision" about Oscar's work limitations, and the ALJ did not have to order consultative evaluations under the circumstances of this case. *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001) (concluding an ALJ did not err in not sending a claimant for a consultative examination where "[t]he record contained substantial evidence to support the ALJ's decision"); *Nicholas v. Barnhart*, 42 F. App'x 902 (8th Cir. 2002) (unpublished per curiam) ("The ALJ had no obligation to order a

14

consultative examination because he had sufficient evidence from a treating physician and counselors to make a determination that [the claimant's] depression was not disabling.").

### 3. Weight of Primary Care Physician Opinions

Oscar challenges the weight the ALJ gave Dr. Rodriguez-Escobar's opinions and argues the ALJ did not provide good reasons for rejecting those opinions. Oscar contends that, as a treating physician, Dr. Rodriguez-Escobar's opinions were entitled to controlling weight and should have been adopted. This argument is unavailing.

"A treating source's opinion is not 'inherently entitled' to controlling weight."[4] *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006)). A treating physician's opinion will generally receive controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Dolph v. Barnhart,* 308 F.3d 876, 878 (8th Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments 'are supported by better or more thorough medical evidence,' or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir.2000) (citing *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997)). However, the ALJ must "always give good reasons" for the weight afforded to a treating physician's evaluation. 20 C.F.R. § 404.1527(d)(2); *Dolph*, 308 F.3d at 878-79.

Notwithstanding Oscar's assertions to the contrary, the ALJ appropriately considered Dr. Rodriguez-Escobar's opinions and gave some less weight for "good

---

[4]The SSA updated its rules regarding treating sources in 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15132 (Mar. 27, 2017) (amending and correcting the rules). Because Oscar's disability application predates the new rules, we do not address them. *See Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022).

reasons" routinely approved by the courts. *See*, *e.g.*, *Hacker* 459 F.3d at 938. For example, the ALJ reasonably found that some of Dr. Rodriguez-Escobar's opinions were unsupported by and inconsistent with other medical evidence in the record and Dr. Rodriguez-Escobar's own notes.

More specifically, the ALJ noted that Dr. Rodriguez-Escobar's highly restrictive limitations regarding Oscar's ability to sit and stand in 15-minute intervals were inconsistent with the objective medical findings. The ALJ considered a magnetic resonance imaging (MRI) scan in January 2015 which demonstrated mild spinal canal stenosis and mild foraminal stenosis and a February 2015 cervical computerized tomography (CT) scan which demonstrated mild degenerative changes. The ALJ also noted medical findings illustrating Oscar has "full strength, normal sensation, good range of motion, normal gait, and negative straight leg raise testing," and that "despite [Oscar's] allegations of severe pain, he is typically noted to be in no acute distress." The ALJ determined these findings and other objective medical evidence in the record were at odds with the highly restrictive limitations opined by Dr. Rodriguez-Escobar.

Moreover, the ALJ did give some weight to statements made by Dr. Rodriguez-Escobar that were consistent with other evidence in the record. These statements included that "[Oscar's] degenerative disc disease causes difficulty standing and walking for extended periods, reaching overhead, bending, lifting heavy items, and performing routine and repetitive work." The ALJ reasoned that, while vague, this was supported by the evidence of record.

The ALJ properly discounted Dr. Rodriguez-Escobar's opinions that were expressed as part of a Physical Medical Source Statement completed in August 2017, which essentially consisted of various checked boxes. The Eighth Circuit has held that assessments involving checked boxes, circled answers, and brief fill-in-the-blank responses possess little evidentiary value. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). Similarly, the ALJ appropriately weighed other portions of Dr. Rodriguez-

Escobar's opinions to the extent they were based on Oscar's subjective complaints, rather than medical evidence. *See Kirby* 500 F.3d at 709.

Finally, the ALJ correctly gave little weight to Dr. Rodriguez-Escobar's blanket statements that Oscar is unable to work. As the ALJ noted, these are conclusory statements that are reserved to the Commissioner and not entitled to significant weight. Based on the above, the Court finds the ALJ's evaluation of Dr. Rodriguez-Escobar's opinions was neither improper nor inadequately explained.

### 4. Mental impairments

Oscar contends that the ALJ erred by failing to recognize his mental impairments as "severe" at Step Two of the sequential evaluation process, requiring remand. While Oscar's arguments on this point are limited, he generally argues that Dr. Rodriguez-Escobar's notes, in combination with Licensed Independent Mental Health Practitioner Magda Blanco's diagnoses and reports, were sufficient to find Oscar had severe mental impairments that limited his ability to work. The Commissioner contends the ALJ properly applied the special technique for evaluating mental impairments under the applicable federal regulations and correctly determined Oscar's impairments are not severe.

The ALJ found that Oscar's medically-determinable mental impairment causes no more than mild limitation and there is no more than a minimal limitation in Oscar's ability to do basic work activities. In reaching this conclusion, he considered four broad functional areas: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. *See* 20 C.F.R. §§404.1520a(c); 416.920a(c).

The ALJ determined Oscar had mild limitation in the first three areas, and no limitation in the fourth. He gave great weight to the opinions of the State agency psychological consultants who reviewed the claim at the initial and reconsideration levels. The ALJ found these opinions to be consistent with the evidence adduced at the hearing.

17

Little weight was given to Ms. Blanco's statements, as she was not an acceptable medical source and some of her opinions were conclusory. Even so, the ALJ considered her opinions with regard to the severity of Oscar's impairments.

After a thorough review of the record, the Court finds the ALJ properly evaluated Oscar's mental impairments and sufficiently considered the relevant factors. The ALJ's determination that Oscar's mental impairments are non-severe is supported by substantial evidence in the record. To the extent Oscar contends the ALJ should have weighed the relevant facts "differently or drawn different conclusions" based on the record evidence, those contentions likewise "do not warrant relief under [the requisite] deferential standard of review." *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) ("It is not the role of this court to reweigh the evidence presented to the ALJ.").

### 5. Appointment of the ALJ under the Federal Vacancy Reform Act

Finally, Oscar argues that Berryhill was not properly serving as Acting Commissioner in July 2018 when she ratified the appointment of all ALJs, including ALJ Mates, making the ratifications ineffective. Oscar contends ALJ Mates was thus not properly appointed at the time he issued Oscar's unfavorable opinion. He again claims he is entitled to a new hearing before a different ALJ.

This Court recently considered the arguments raised by Oscar in *Raymond N. v. Kijakazi* and does not reiterate them at length here. *See Raymond N. v. Kijakazi*, 8:21CV429, 2022 WL 16578854, *8-9 (D. Neb. November 1, 2022). The issue turns on whether § 3346(a)(2) of the Federal Vacancy Reform Act ("FVRA") is a tolling provision or a "spring-back" provision—a question currently pending before the Eighth Circuit.[5] Oscar generally argues that it is tolling—that Berryhill's authority lapsed in November 2017 and that she was not properly serving as Acting Commissioner pursuant to

---

[5] *See Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022), *appeal docketed*, No. 22-1601 (8th Cir. March 22, 2022).

§ 3346(a)(2) during Andrew Saul's nomination. The Commissioner, on the other hand, argues that that § 3346(a)(2) was triggered by Saul's nomination regardless.

In *Raymond*, this Court concluded that the plain text of the FVRA supports the Commissioner's interpretation. "The text of the statute does not require that a nomination be submitted within the initial 210-day period for § 3346(a)(2) to apply." *Raymond N.*, 2022 WL 16578854 at *10. Additionally, this Court noted the legislative history and potential implications to ongoing government functions support a finding that Berryhill was validly serving as Acting Commissioner under the FVRA when she ratified the appointment of the ALJs. Oscar does not present any new arguments that change the Court's decision. As such, the Court concludes Oscar's ALJ was properly appointed and remand is not warranted.

In light of the foregoing,

IT IS ORDERED:

1. Plaintiff Oscar L.'s Motion for an Order Reversing the Commissioner's Decision (Filing No. 14) is denied.
2. Defendant Kilolo Kijakazi's Motion to Affirm Commissioner's Decision (Filing No. 18) is granted.
3. The Complaint (Filing No. 1) is dismissed.
4. A separate judgment will issue.

Dated this 5th day of December 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge